No. 39,970

In the Matter of the Application of CLARENCE E. WINDLE for a Writ of Habeas Corpus. CLARENCE E. WINDLE, *Appellant,* v. JOHN P. WIRE, *Appellee.*

(294 P. 2d 213)

Opinion filed February 29, 1956.

*J. J. Mangan,* of Dodge City, argued the cause and *Z. A. Nevins, Jr.,* of Dodge City, was with him on the briefs for the appellant.

*Rae E. Batt,* county attorney, of Kinsley, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal from a judgment denying a writ of habeas corpus sought by appellant, hereinafter referred to as petitioner, who had been bound over for trial for his alleged crime after a preliminary examination before an Edwards county magistrate.

It is disclosed by the record that the county attorney filed a complaint before the judge of the county court of Edwards county, charging that on November 7, 1953, Clarence E. Windle did unlawfully, willfully and feloniously draw, make, utter, issue and deliver to Farlow Implement Co. his certain check in writing, drawn upon the First National Bank of Spearville, Kansas, in the sum of $2,000, payable to the order of Farlow Implement Co., knowing at the time of the making, drawing, uttering and delivering of said check that he had no funds on deposit in, or credits with said bank, with which to pay said check upon presentation. Pursuant thereto, the petitioner was arrested and brought before the judge of the county court of Edwards county for a preliminary examination and bound over to the district court for trial. Petitioner commenced an action of habeas corpus in the district court to procure his discharge from custody, contending the evidence was not sufficient to justify the examining magistrate's holding him for trial. The trial court sustained a demurrer to petitioner's evidence and remanded him to the custody of the sheriff, and he appeals.

The evidence as disclosed by the record is not in dispute. Windle, on November 7, 1953, gave to E. J. Farlow, owner of the Farlow Implement Co., the following check:

"Nov. 7, 1953
"Pay to the order of Farlow Implement Co. $2000.00
"Two Thousand & no/100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Dollars
"First National Bank, Spearville, Kansas
"Hold Jan 1                    "ss/Clarence E. Windle"

It was agreed between the parties that Farlow was to hold the check until January 1, 1954, as Windle would have between $15,000 and $16,000 coming in from the sale of his sheep, at which time he was to present it to the bank for payment. The words "hold Jan 1" were placed on the check at the time it was given to Farlow. After January 1, Farlow took the check to the bank at Spearville, and payment was refused by the bank for the reason Windle did not have sufficient funds in the bank to pay the check.

To justify binding over for trial a person accused of crime, it is only necessary at the preliminary examination that sufficient evidence be adduced to satisfy the examining magistrate that a crime has been committed and that the accused is probably guilty. (G. S. 1949, 62-620 and 62-621.)

G. S. 1949, 21-554, provides, in pertinent part, that it shall be unlawful for any person to draw, make, utter, issue or deliver to another any check on any bank or depository for the payment of money, knowing at the time of the making and delivery of the check that he has no funds on deposit in or credits with such bank with which to pay the check upon presentation. Section 21-555 provides that any person willfully violating any of the provisions of the aforementioned section, shall be deemed guilty of a misdemeanor if the check is drawn for less than twenty dollars, and be deemed guilty of a felony if the check is drawn for twenty dollars or more. Section 21-556 provides for abatement of the action under certain conditions.

Petitioner contends that the mentioned statutes are in conflict with section 16 of the bill of rights, which forbids imprisonment for debt, except in case of fraud. We do not deem it necessary to labor this point inasmuch as the same question was presented to this court in *State v. Avery*, 111 Kan. 588, 207 Pac. 838, where we held, after analyzing the statutes and section 16 of the bill of rights, that the statutes do not impose imprisonment for debt, saying:

". . . The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. There is no constitutional objection to such legislation, the necessity for which the legislature is authorized to determine. . . ." (p. 590.)

We held the purpose of the statute was to discourage overdrafts and resulting bad banking, to stop the practice of "check-kiting," and generally to avert the mischief to trade, commerce and banking which the circulation of worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless-check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense, and does not violate section 16 of the bill of rights.

The principles announced in *State v. Avery*, supra, have been

upheld in *State v. Crane*, 136 Kan. 181, 14 P. 2d 634; *State v. Gillen*, 151 Kan. 359, 99 P. 2d 832; *State v. Bechtelheimer*, 151 Kan. 582, 100 P. 2d 657, and *State v. Marshall*, 152 Kan. 607, 106 P. 2d 688.

The gist of petitioner's second argument is that the check marked "hold" constituted a postdated check and as a result does not violate the provisions of section 21-554. As disclosed by the record, there is no question but that petitioner issued and delivered the check on November 7, 1953, and that it was plainly marked "hold Jan 1". There is no contention that at the time petitioner gave the check it was to be considered anything but a check. There was no evidence that it was to be treated as a promissory note or any other instrument except a check. There was no contention that it was not properly presented at the bank for payment, and refused for insufficient funds. Assuming that it was a postdated check, again this question was treated adversely to petitioner's contention in *State v. Avery*, supra, where we held that the statute also applied to postdated or checks to be presented for payment at a future date. In *State v. Marshall*, supra, we held that an understanding between the maker and payee of a no-fund check that the check is to be held and treated as a promissory note does not constitute in itself a defense in a prosecution for violation of the provisions of section 21-554.

Counsel for petitioner is cognizant of our decision in *State v. Avery*, supra, but contends that it is the most extreme case upholding the constitutionality of the statute in question. The opinion in that case was written in the year 1922. Although our legislature held fifteen regular sessions since that time, the worthless-check statute in question has not been modified, indicating that our legislators are satisfied with the interpretation of the statute given to it in that opinion, and we know of no reason at this late date for making any modification of our former decisions on the questions involved.

The evidence justified a finding that on the dates of the execution and presentation of the check in question there were no funds on deposit to meet it, and that the offense denounced by section 21-554 of the statute had been committed, and that there was probable cause to believe petitioner was guilty. The trial court did not err in sustaining the state's demurrer to petitioner's evidence.

The judgment is affirmed.

HARVEY, C. J., not participating.